IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **JEFFREY NIX,** | * | |
| | * | |
| Plaintiff, | * | |
| | * | Civil No.   **PJM 15-2317** |
| v. | * | |
| | * | |
| **NASA FEDERAL CREDIT** | * | |
| **UNION,** *et al.*, | * | |
| | * | |
| Defendants. | * | |
| | * | |

## <u>MEMORANDUM OPINION</u>

In March 2015, *pro se* Plaintiff Jeffrey Nix,[1] a self-employed computer repairman, paid thirty dollars to open an online checking account with Defendant NASA Federal Credit Union ("NASA FCU"). Two months later, the Internal Revenue Service apparently made a direct deposit of over half a million dollars into Nix's account. A few days after the deposit, Nix made thousands of dollars in online payments to creditors. Becoming suspicious, NASA FCU stopped the withdrawals and froze the account, and eventually returned the money to the IRS.

Nix has sued NASA FCU and four of its employees – Douglas Allman, Rhonda Bazey, Michelle Cochran, and Jennifer Walge – alleging that their conduct violated the Expedited Funds Availability Act (EFAA), 12 U.S.C. § 4001 *et seq*., the U.S. Privacy Act, 5 U.S.C. § 552a, Article I § 10 of and the Fourth, Fifth and Fourteenth Amendments to the Federal Constitution, U.S. Const art. I, § 10, amends. IV, V, XIV, the Universal Declaration of Human Rights (UDHR), G.A. Res. 217A(III), U.N. GAOR, 3d Ses., U.N. Doc A/810, at 74, and multiple other

---

[1] Plaintiff sometimes refers to himself as "Jeffrey Nix El" in his Complaint. However, Exhibits attached to the Complaint suggest Plaintiff's name is Jeffrey Nix. The Court will refer to him as Nix throughout this Opinion.

statutes. NASA FCU has filed a Motion to Dismiss all Counts of the Complaint (ECF No. 10).

Because Nix's allegations state no plausible claims for relief, NASA FCU's Motion is

**GRANTED**, and the Court will *sua sponte* dismiss all claims against the individual Defendants.[2]

## I. FACTS[3]

On March 31, 2015, Nix opened a checking account with NASA FCU over the internet

and deposited $30.00 to activate it. Compl. ¶ 4. No further deposits were made until more than

two months later, on June 19, 2015, when an electronic tax refund from the U.S. Treasury in the

amount of $544,387.99 was deposited into the account directly. *Id.*

Ten days later, on June 29, 2015, Nix scheduled payments to his creditors through an

online bill payment system, totaling $38,327.99 payable to, among others, BMW, Visa

MasterCard, and the U.S. Department of Education. *Id.* ¶ 7; Compl. Ex. A, ECF No. 1-2. A

"Rush Payment Fee" of $14.95 was also withdrawn. *Id.*

The next day, on June 30, 2015, NASA FCU, suspicious of the size of the transfer and

payments given the history of the account, stopped those payments. Compl. ¶ 4, 8; Compl. Exs.

A, A-1, E, ECF Nos. 1-2, 1-3, 1-8. That same day, NASA FCU compliance officer Michelle

Cochran called Nix to inform him about the hold on his account. Compl. Ex. E at 1, ECF No. 1-

7. Cochran documented the call in a letter she later sent to Nix, dated June 30, in which she

explained the hold in the following terms:

---

[2] Allman, Bazey, Cochran, and Walge ("the individual Defendants") have not entered appearances in this case. But because the Court finds in Part III, *infra*, that none of Nix's causes of action are tenable as a matter of law, the Complaint will be dismissed as to the individual Defendants as well.

[3] The majority of the facts are as alleged in the Complaint and the Exhibits attached to the Complaint. *See* Fed. R. Civ. P. 10(c). However, the Court also considers facts set forth in documents attached to NASA FCU's Motion to Dismiss, which are integral to the Complaint and the authenticity of which is not disputed. *See Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) (citing *Blankenship v. Manchin*, 471 F.3d 523, 526 n.1 (4th Cir. 2006)).

The recent IRS tax refund of $544,387.99 was much larger than is typical of our personal household accounts. Additionally, there were bill payments created to move funds out of your newly established account. These factors raised some concerns and our first priority was to protect you and your account. We needed to ensure these were, in fact, your transactions and secondly we needed to verify funds with the IRS to ensure no error had occurred. As I mentioned, if there was a processing error, the IRS would collect the full amount from the Credit Union whether the funds were in the account or not.

*Id.* Nix also spoke on June 30 with Jennifer Walge, regulatory and compliance supervisor for NASA FCU. As Nix reported in later correspondence, Walge told him that "internal policies require large deposits such as the one deposited to Mr. Nix's account [to] be placed on hold to check for errors." Compl. Ex. D at 2, ECF No. 1-6. Nix told Walge he could not log into his account online. *Id.* Walge said she would look into it, and on July 2, 2015, left a message on Nix's phone that his inability to log on was related to the hold on the account. *Id.*

On July 7, 2015, Nix purportedly contacted the IRS to verify the status of his refund. Compl. ¶ 14. According to Nix, a customer service agent there told him that his refund was "true, correct, and approved."[4] *Id.*

On July 8, 2015, Nix wrote to Douglas Allman, Chief Executive Officer of NASA FCU, Rhonda Bazey, Vice President and Chief Financial Officer of NASA FCU, Walge, Cochran, and the National Credit Union Administration's (NCUA's) Office of Consumer Protection. Compl. ¶¶ 14, 16; Compl. Ex. D at 1, ECF No. 1-6. In his letter, Nix claimed that NASA FCU's actions violated several statutory and constitutional provisions, requested certain information about Cochran, and demanded proof that he had signed an agreement allowing NASA FCU to place a hold on his account. *Id.* He recounted his conversations with Cochran and Walge, and described

---

[4] There is no document supporting this assertion, and NASA FCU suggests in its Reply Brief that the conversation may not have taken place. *See* Def.'s Reply in Support Mot. to Dismiss, at 2 ("Plaintiff further contends that he has spoken to 'several' IRS representatives regarding the refund, but, tellingly, does not identify the agents or allege that the IRS issued a new refund upon his request."). For the purposes of the present Motion, however, we "must accept as true all of the factual allegations contained in the complaint." *E.I du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

his call with the IRS in which the representative reportedly told him there were no errors. *Id.* at

2. Nix signed off, threatening to sue NASA FCU and its staff in this Court. *Id.* at 3-4.

On July 15, 2015, Cochran wrote to Nix informing him that, when he opened the account,

he agreed to NASA FCU's Member Services Agreement (MSA), which provides that if NASA

FCU believes there is suspicious activity concerning an account, it may "freeze the funds in the

account pending resolution of the dispute or activity to our satisfaction."[5] Compl. Ex. C, ECF

No. 1-5. Cochran told Nix that the IRS had requested additional information about the deposit,

said its review could take an extra fifteen days, and asked NASA FCU to hold the funds in the

meantime. *Id.* Cochran pointed out that, under Section D.17 of the MSA, NASA FCU could

withhold account payments if it receives notice of any "proceeding relating to the account." *Id.*

Cochran told Nix the funds would be held "until they are either reclaimed by the IRS or until we

---

[5] The relevant provisions of the MSA read as follows:

    **16.**    **Dispute Among Owners or Signers or Suspicious Activity.** If we believe that the signers, owners, or persons on behalf of the signers or owners of an account are in dispute concerning any aspect of the account or that there is suspicious activity involving the account, in our sole discretion, we may do any or all of the following things: continue to act as set forth in this Agreement based upon the signature of any authorized signer as shown in our records; freeze the funds in the account pending resolution of the dispute or activity to our satisfaction; or, except as expressly limited by law, regulation, or our bylaws, deposit the funds from the account into the registry of an appropriate court pending a court order establishing the parties who are authorized to withdraw funds from the account or the rights of the parties to the funds.

    **17.**    **Legal Process Against an Account.** If we receive any notice of lien, process, garnishment, execution, attachment, or other proceeding relating to you or your account, we may withhold payments of as much of the balance in your account as may be required by law and pay such amount to the court, creditor, or other party in accordance with applicable law. We may also place a hold on your account for a reasonable period of time to permit the parties or us an opportunity to determine who has prior rights in the funds, to file additional legal proceedings, or to resolve the action informally. We are not liable for dishonoring orders because of insufficient funds in your account due to a hold placed on the account or resulting from service charges, setoffs, levies, garnishments, liens, claims, or other legal process.

NASA FCU's Mot. Dismiss Compl. Ex. 1 at 2, ECF No. 10-2.

receive notice from the IRS satisfactory to us that the funds can be released and that they will not be reclaimed." *Id.*

On July 21, 2015, Nix wrote again to Allman, Bazey, Cochran, and Walge, repeating much of what he had written in previous letters and once more threatening to sue. Compl. Ex. F at 1-3, ECF No. 1-8. In response to Cochran's July 15 letter, Nix argued that the MSA provisions regarding suspicious activity did not apply when the U.S. Treasury deposits funds, and claimed that, as a member of NASA FCU, he should have been copied on correspondence between NASA FCU and the IRS regarding his account. *Id.* at 3.

On July 23, 2015, Cochran wrote to Nix explaining that "[t]he IRS contacted the Credit Union via e-mail on July 22, 2015 and requested the full amount of the tax refund be returned [to it]. A check was issued to the Department of the Treasury in the amount of $544,387.99 the same day." Compl. Ex. G, ECF No. 1-9. Cochran provided Nix a reference number and said he should contact the IRS if he had questions. *Id.*[6]

~~On July 22, 2015, the entire balance of Nix's account, or $544,372.10, was withdrawn by check. Compl. Ex. A, ECF No. 1-2.~~

On July 27, 2015, Nix wrote again to Allman, Bazey, Walge, Cochran, and the NCUA, complaining that his funds were "seized" when NASA FCU issued the check to the IRS, and demanding written confirmation that certain procedures were followed. Compl. Ex. H at 2, ECF No. 1-10.

Despite Nix's requests, NASA FCU did not provide him with copies of e-mails between NASA FCU and the IRS, nor did it show him a court order or warrant authorizing seizure of his account. Compl. ¶¶ 29-31. Further, Nix says, NASA FCU did not fully disclose its practices

---

[6] On July 22, 2015, the entire balance of Nix's account, or $544,372.10, was withdrawn by check. Compl. Ex. A, ECF No. 1-2.

when verifying his tax refund; nor did it provide him with proof of the "wet-ink" membership agreement he allegedly signed. *Id.* ¶¶ 30, 33. There are no legal judgments against Nix, nor has a levy been issued by the IRS. Compl. ¶¶ 23-24.

On the basis of the above facts,[7] Nix has sued NASA FCU, Allman, Bazey, Cochran, and Walge, claiming that they have: refused to make funds available to him in violation of the EFAA, 12 U.S.C. §§ 4001-4010, and its implementing regulations, 12 C.F.R. §§ 229.10 *et seq.* (Count I); disclosed his personal identifying information to a third party without his consent in violation of the U.S. Privacy Act of 1974, 5 U.S.C. § 552a (Count II);[8] interfered with his "right to contract", and violated his Fourth, Fifth and Fourteenth Amendment rights (Counts II, III and IV); arbitrarily deprived him of property in contravention of the Universal Declaration of Human Rights (Count V); and breached their fiduciary duty to him under provisions of the Investment Company Act of 1940, 15 U.S.C. § 80a-35, and the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1105(b)(c), § 1109(a) (Count V). Compl. ¶¶ 34-49. He claims that because of the Defendants' actions, he was unable to pay his creditors and has suffered "prejudice and injury" as a result. *Id.* ¶ 14. Nix seeks injunctive and equitable relief against

---

[7] Nix has attached several Exhibits to his Complaint that do not appear relevant to his claims or the present Motion to Dismiss. They include: (1) a document supposedly signed by U.S. Secretary of State John Kerry purportedly entitling Nix to "full faith and credit" (Ex. I, ECF No. 1-11); (2) Nix's birth certificate (Ex. I, ECF No. 1-11); (3) a "UCC Financing Statement" listing "Jeffrey Bryant Nix Estate" as a debtor and "Jeffrey B Nix El" as a secured party (Ex. I.1, ECF No. 1-12); (4) a letter from the Maryland Department of Assessments and Taxation confirming the registration of "Jeffrey Bryant Nix" as a trade name (Ex. I.2, ECF No. 1-13); a "Truth Affidavit" by Jeffrey Nix purporting to grant power-of-attorney to "Jeffrey Bryant Nix El" (Ex. J, ECF No. 1-14); an "Affidavit of Reservation of Rights" signed by Jeffrey Nix purporting to "reserve all of [his] rights" under UCC § 1-308 (Ex. K, ECF No. 1-15); and a letter to the U.S. Post Office asking it to change his address to "Jeffrey Bryant Nix, Estate, Executor Office, Nation Maryland" (Ex. L, ECF No. 1-16).

NASA FCU claims many of these exhibits are characteristic of so-called "Sovereign Citizens," a movement "famous for financial schemes, tax avoidance, and court filings containing hundreds of pages of 'pseudo legal nonsense.'" Mot. Dismiss at 3 (quoting *Sovereign Citizens Movement*, Southern Poverty Law Center, https://www.splcenter.org/fighting-hate/extremist-files/ideology/sovereign-citizens-movement (last visited Jul. 28, 2016). As interesting as this may be, it is of no direct legal relevance to FCU's Motion to Dismiss.

[8] In his Complaint, Nix incorrectly cites the Privacy Act as being codified at 5 U.S.C. § 552(a). This is in fact where the Freedom of Information Act (FOIA) is codified. Since the not entirely lucid allegations in Nix's complaint more closely resemble a Privacy Act claim than a FOIA claim, the Court construes Count II to be brought under the former statute.

Defendants, and actual, compensatory, punitive, and treble damages in the total amount of around $3.33 million. Compl. at 10.A-E.[9]

NASA FCU has moved to dismiss all counts, arguing pursuant to Federal Rule of Civil Procedure 12(b)(6)[10] that Nix has failed to state a claim upon which relief can be granted.[11]

## II. STANDARDS OF LAW

Federal Rule of Civil Procedure 8(a) prescribes "liberal pleading standards," requiring only that a plaintiff submit a "short and plain statement of the claim showing that [he or she] is entitled to relief." *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (citing Fed. R. Civ. P. 8(a)(2)). To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

---

[9] On July 5, 2015, the Court, somewhat perplexed given the unusual factual circumstances of this case, directed the Parties to produce certain additional information regarding Nix's abnormally large tax refund, including copies of any communications with the IRS and attempts by Nix to dispute the return with IRS. *See* Mem., ECF No. 14. Both Parties complied with this request within the required time frame. *See* ECF Nos. 15-16. The Court has reviewed these documents and remains no more enlightened as to how the unusual facts of this case came about. Accordingly, the Court will not consider facts drawn from the Parties' additional documents in weighing the present Motion, and will resolve NASA FCU's Motion solely based on the facts as alleged in Nix's Complaint and contained within his abundant Exhibits. *See supra* note 3.

[10] NASA FCU also asks the Court to dismiss the Complaint as to the individual Defendants on the basis that they were improperly served. The Court need not address NASA FCU's service arguments for two reasons. First, the proper vehicle to challenge service of process is through a motion under Federal Rule of Civil Procedure 12(b)(5), not 12(b)(6). *See* Fed. R. Civ. P. 12(b)(5). Second, even if NASA FCU had filed a procedurally sound motion, it would have no standing to seek dismissal of the complaint against its non-moving employees. *See, e.g.*, *Mantin v. Broad. Music, Inc.*, 248 F.2d 530, 531 (9th Cir. 1957) (holding that moving defendants lacked standing to seek dismissal of complaint as to non-moving defendants). Even so, the Court may order dismissal against the individual Defendants *sua sponte*. *See, e.g.*, *Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 655 n.10 (4th Cir. 2006)

[11] Nix subsequently filed a Motion for Leave to File a Surreply to NASA FCU's Motion to Dismiss (ECF No. 13). Surreplies are disfavored in this District, and it is clearly stated in the Local Rules that, unless otherwise ordered, surreply memoranda may not be filed. *See* Local R. 102(a); *see also Chubb & Son v. C&C Complete Services*, 919 F.Supp. 2d 666, 679 (D. Md. 2013). Although surreplies may be allowed if necessary to contest matters raised for the first time in the opposing party's reply brief, *see Khoury v. Meserve*, 268 F.Supp. 2d 600, 605 (D. Md. 2003) (citing *Lewis v. Rumsfeld*, 154 F.Supp.2d 56, 61 (D.D.C. 2001)), that is not the case here. Nix has moved to file a surreply to answer "incorrect statements," to "reinforce [his] position," and to "identif[y] fundamentally important errors" in NASA FCU's arguments. *See* Pl.'s Surreply Mot. at 2-3, ECF No.13. He points to no matters raised for the first time in NASA FCU's reply brief. Nevertheless, since the surreply does not materially affect the Court's decision, to give Nix the full scope of argument on appeal, the Court will allow it. Nix's Motion for Leave to File a Surreply is therefore **GRANTED.**

*Twombly*, 550 U.S. 554, 570 (2007). This standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although a court will accept factual allegations as true, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Indeed, the court need not accept legal conclusions couched as factual allegations or "unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Markets, Inc. v. J.D. Associates Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). In the end, the complaint must contain factual allegations sufficient to apprise a defendant of "what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). A district court may *sua sponte* dismiss a complaint for failure to state a claim, and where the face of a complaint plainly fails to state a claim for relief, the district court has "no discretion but to dismiss it." *Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 655 n.10 (4th Cir. 2006) (internal quotations omitted).

While federal courts are obliged to liberally construe a *pro se* litigant's claims in applying the above analysis, this requirement "does not transform the court into an advocate." *United States v. Wilson*, 699 F.3d 789, 797 (4th Cir. 2012) (internal quotations and citations omitted). The Fourth Circuit has noted that "[w]hile *pro se* complaints may 'represent the work of an untutored hand requiring special judicial solicitude,' a district court is not required to recognize 'obscure or extravagant claims defying the most concerted efforts to unravel them.'" *Weller v. Dep't of Soc. Servs.,* 901 F.2d 387, 391 (4th Cir. 1990) (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986)).

## III. ANALYSIS

The Court addresses each of Nix's claims in turn.

### A.      Electronic Funds Availability Act Claims (Count I)

In Count I, Nix alleges that NASA FCU violated the EFAA, 12 U.S.C. §§ 4001-4010, by failing to make part of his refund available to him within the time schedule prescribed by statute. *See* Compl. ¶¶ 34-36. He appears to claim Defendants violated section 4002 of the EFAA, which requires that funds deposited through checks "drawn on the Treasury of the United States" be made available "not later than the business day after the business day on which such funds are deposited." 12 U.S.C. § 4002(A); *see also* 12 C.F.R. § 229.10. In response, NASA FCU argues that it in fact made Nix's refund available to him, but simply froze the funds pursuant to its own policies, which the EFAA does not prevent a bank from doing. Mot. Dismiss at 4, ECF No. 10.

The Court agrees with NASA FCU.

Enacted to provide faster availability of deposited funds, the EFAA establishes specific time periods in which depository banks must make deposits available for withdrawal, and makes banks civilly liable to individuals for damages incurred because of an EFAA violation. *See* 12 U.S.C. § 4010(a); *see also Haas v. Commerce Bank*, 497 F. Supp. 2d 563, 565 (S.D.N.Y. 2007); *Essex Const. Corp. v. Indus. Bank of Wash., Inc.*, 913 F. Supp. 416, 417 (D. Md. 1995). Multiple courts, however, have held that merely placing a hold on or freezing funds in an account after deposits have been made available is not a violation of the EFAA and does not support a claim for civil liability. *See Anderson v. USAA Fed. Sav. Bank*, No. 13-1316, 2013 WL 4776728, at *2 (D.S.C. Sept. 4, 2014) (citing *Little Donkey Enters. Wash., Inc. v. Bancorp*, 136 Fed. App'x 91, 92 (9th Cir. 2005)).

NASA FCU rightly points out that the facts alleged in Nix's Complaint and contained within the Exhibits suggest that NASA FCU complied fully with the EFAA, since there is no allegation that it did not make the disputed tax return funds available to Nix within one day of their deposit. On the contrary, Nix's Exhibits show the funds were deposited on June 19, 2015 and made available to him that same day. *See* Compl. Ex. B, ECF No. 1-4 (showing Nix's account holding $544,390.04 following a $544,387.99 deposit by the IRS). It was only 11 days later, when Nix sought to make very large "rush bill payments," that NASA FCU froze his account pursuant to the MSA, which permits NASA FCU to freeze an account when it believes there is "suspicious activity." *See* Mot. Dismiss Ex. 1 at 2, ECF No. 10-2. In other words, NASA FCU merely "plac[ed] a hold on or fr[oze] funds in an account after the deposits [had] been made available." *Little Donkey*, 136 Fed. App'x at 92; *see also Front Nat'l Bank v. Parker*, No. 95-2150, 1999 WL 33438078, at *13-14 (C.D. Ill. Feb. 26 1999) (holding bank did not violate EFAA because freeze "consisted entirely of provisional credits which [the bank] had the right to revoke under its deposit agreement.").

Construing Nix's allegations liberally, it is pellucid that no facts support his allegation that NASA FCU did not make the IRS refund available to him within the timeframe required under the EFAA. Rather, the extensive bank records attached to Nix's Complaint demonstrate the opposite to be true. For this reason, Count I is **DISMISSED WITH PREJUDICE** as to both NASA FCU and the individual Defendants.

**B.**      **Constitutional Claims (Counts II, III, and IV)**

In Count II, Nix appears to contend that NASA FCU violated his "right to contract" under the Contract Clause of Article I § 10 of the Federal Constitution[12] when it failed to provide him with a signed membership agreement upon request. Compl. ¶¶ 38-40. At the same time, in Counts III and IV, Nix alleges that NASA FCU's freezing and withdrawal of his funds was an unlawful "seizure" of his property prohibited by the Fourth Amendment, and a deprivation of property without the due process guaranteed by the Fifth and the Fourteenth Amendments. Compl. ¶¶ 41-45. In support of these claims, Nix argues that because NASA FCU is federally chartered, insured, and regulated, it is a government actor and thus subject to the Constitution's constraints. *See* Pl.'s Resp. Mot. Dismiss at 9-11, ECF No. 11.

All of Nix's constitutional claims fail as a matter of law.

His claims under Article I § 10 and the Fourteenth Amendment hold no water for obvious reasons. The Contracts Clause applies only to the states, not to the federal government or individuals. *See Pension Ben. Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 734 n.9 (1984) ("It could not justifiably be claimed that the Contract Clause applies, either by its own terms or by convincing historical evidence, to actions of the National Government."). The Fourteenth Amendment is also inapplicable to the federal government. *See, e.g.*, *United States v. Edwards*, 98 F.3d 1364, 1368 (D.C. Cir. 1996), *cert. denied*, 520 U.S. 1170, 117 S. Ct. 1437, 137 L.Ed.2d 544 (1997) (recognizing that the "Fourteenth Amendment does not apply to the federal government"). As Nix's Complaint alleges that NASA FCU and the individual Defendants are agents of the federal government, and contains no allegation that any of the Defendants are state actors, or acting "under color of state law," *see West v. Atkins*, 487 U.S. 42, 48 (1988), Nix's

---

[12] The so-called Contracts Clause provides that "[n]o State shall . . . pass any . . . Law impairing the Obligation of Contracts." U.S. Const., art. I, § 10.

claims in Count II under Article I § 10, and in Count IV under the Fourteenth Amendment, are **DISMISSED WITH PREJUDICE** as to all Defendants.

Nix's Fourth and Fifth Amendment claims similarly lack merit. As a preliminary matter, the Court will assume that Nix brings these claims under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) which, in limited circumstances, allows victims of a violation of the Federal Constitution by a federal officer to recover damages against the officer in federal court despite the lack of any statute conferring such a right. *See id.* at 398; *see also Correctional Serv. Corp. v. Malesko*, 534 U.S. 61, 66-67 (2001). In response to Nix's allegations, NASA FCU asserts that any Fourth and Fifth Amendment claims are untenable because a federal credit union and its employees are not federal government actors. *See* Mot. Dismiss at 5-6. Again, the Court agrees.

The Constitution applies only to government action, not private conduct. *See, e.g.*, *Rendell-Baker v. Kohn*, 457 U.S. 830 (1982). A federal credit union is a non-profit, cooperative association organized under the Federal Credit Union Act, 12 U.S.C. § 1452 *et seq*. *United States v. Michigan*, 851 F.2d 803, 804 (6th Cir. 1988). Although Nix rightly points out that courts have held credit unions to be federal instrumentalities, *see, e.g.*, *id.* at 806-07 (holding federal credit union federal instrumentality and immune from state taxation because it performs an "important governmental function" and is "extensively regulated" under federal law), his conclusion that they are therefore subject to the manifold constraints of the Federal Constitution is wrong. Instead, multiple courts, including some district courts in the Fourth Circuit, have held that notwithstanding their governmental undergirding, federal credit unions are private actors unbound by relevant constitutional restrictions. *See Jesinger v. Nev. Fed. Credit Union*, 24 F.3d 1127, 1132 (9th Cir.1994) ("[T]he slight degree of government involvement in the business of

federal credit unions does not warrant applying Constitutional requirements to these democratically controlled, non-profit cooperatives."); *see also Smalls v. Woods*, No. 08-458, 2008 WL 867754 (D.S.C. Mar. 27, 2008) (citing *Jesinger* to hold defendant "not amenable to suit" under 42 U.S.C. § 1983 because defendant was employee of federal credit union). Because NASA FCU is a private, not a governmental actor, Nix's constitutional claims against NASA FCU and its employees necessarily fail.[13]

Counts III and IV are **DISMISSED WITH PREJUDICE** as to NASA FCU and the individual Defendants.


**C.      U.S. Privacy Act Claims (Count II)**

In Count II, Nix claims NASA FCU's disclosure of certain personal information to IRS officials violated the U.S. Privacy Act of 1974, 5 U.S.C. § 552a. *See* Compl. ¶¶ 37-40. NASA FCU argues in response that it is not an "agency" within the meaning of the Privacy Act and therefore not subject to its requirements. Mot. Dismiss at 5, ECF No.10. The Court agrees.

The Privacy Act "limits access to any record contained in a system of records without the consent of the individual to whom the record pertains unless disclosure is requested by Congress, a court, an authorized agency, or certain specifically qualified persons, or is required by FOIA [the Freedom of Information Act]." *Greentree v. U.S. Customs Serv.*, 674 F.2d 74, 76-77 (D.C. Cir. 1982) (citing 5 U.S.C. § 552a(b)) (internal quotations and citations omitted). Individuals harmed by a violation of the Privacy Act may bring a civil cause of action in federal court. *See* 5

---

[13] Even if Nix were correct that NASA FCU is a federal actor, he still has no viable cause of action against that Defendant. "Any remedy under *Bivens* is against federal officials individually, not the federal government." *Randall v. United States*, 95 F.3d 339, 345 (4th Cir. 1996)); *see Doe v. Chao*, 306 F.3d 170, 184 (4th Cir. 2002) ("[A] *Bivens* action does not lie against either agencies or officials in their official capacity.") (citing *FDIC v. Meyer*, 510 U.S. 471, 484-86 (1994)). To the extent Nix alleges NASA FCU is part of the federal government, he has no *Bivens* claim because NASA FCU is not an individual federal official.

U.S.C. § 552a(g). However, the Act applies only to "agencies," *see id.* § 552a(b); *see also*

*Falwell v. Executive Office of the President*, 113 F.Supp.2d 967, 968-69 (E.D. Va. 2000).

"Agency" is defined in the Privacy Act by expressly adopting FOIA's definition, 5. U.S.C.

§ 552a(a)(1) – namely "any executive department, military department, Government corporation,

Government controlled corporation, or other establishment in the executive branch of the

Government (including the Executive Office of the President), or any independent regulatory

agency." 5 U.S.C. § 552(f).

At least one court in this Circuit has considered whether federal credit unions come under

FOIA's definition of "agency," and has concluded that they do not. In *United States ex rel.*

*Kwami v. Ragnow*, No. 209cv:11, 2009 WL 6551430, at *2 (E.D. Va. Mar. 12, 2009), the court

dismissed for failure to state a claim a plaintiff's allegations against his federal credit union

under FOIA, reasoning that "federal credit unions are not federal agencies." *Id.* (citing *Jesinger*,

24 F.3d at 1132 (holding federal credit unions free from constitutional requirements) and

*Anderson v. Wiggins*, 460 F. Supp. 2d 1, 7 (D.D.C. 2006) ("A federal credit union – although

perhaps misleading in use of the word 'federal' – is not a government agency, but rather is a

private corporation or association.")).

The Court agrees that FOIA's definition of "agency" does not encompass federal credit

unions. Accordingly, Nix fails to state a claim against NASA FCU under the Privacy Act,[14] and

Count II is **DISMISSED WITH PREJUDICE** as to NASA FCU.

Nix's Privacy Act claims against the individual Defendants fail for a similar reason.

"[C]ivil actions under the [Privacy] Act are properly commenced only against agencies, not

---

[14] As discussed above in note 7, *supra*, Nix's erroneously cites to the section of the U.S. Code in which FOIA is codified when invoking the Privacy Act. Any claim under FOIA on these facts would obviously fail for the same reason the Privacy Act claim fails, i.e., because the definition of "agency" is the same for both. *See* 5 U.S.C. §§ 552a(a)(1), 552(f); *see also Fallwell*, 113 F.Supp.2d at 968; *c.f. Ragnow*, 2009 WL 6551430, at *2.

individuals," *Walker v. Gambrell*, 647 F. Supp. 2d 529, 536 (D. Md. 2000) (citing 5 U.S.C. § 552(g)(1)). Nix's allegations against the individual Defendants are thus also **DISMISSED WITH PREJUDICE**.

### D.      Universal Declaration of Human Rights Claims (Count V)

In Count V of his Complaint, Nix alleges that Defendants deprived him of his property in violation of Article 17 of the UDHR.[15] In response, NASA FCU argues that the UDHR is not binding on U.S. federal courts. Mot. Dismiss at 6, ECF No. 10. NASA FCU is correct.

The UDHR, as a UN General Assembly resolution, is simply a statement of principles and not a treaty or international agreement that would impose legal obligations on the United States or its citizens. *See Sosa v. Alvarez Machain*, 542 U.S. 692, 734 (2004). As such, it provides no private right of action for individual litigants in federal court. *See United States v. Chatman*, 351 Fed. App'x 740, at *1 (3d Cir. 2009) ("[T]he Universal Declaration of Human Rights is a non-binding declaration and provides no private right of action."); *see also Muwwakk'el v. Haefner*, No. 14-666, 2015 WL 727946, at *3 (D. Md. Feb. 18, 2015) ("[A] private right of action under the UDHR is not recognized in United States courts.").

Count V is **DISMISSED WITH PREJUDICE** as to NASA FCU and the individual Defendants.

### E.      Breach of Fiduciary Duty Claims (Count VI)

Lastly, Nix alleges in conclusory fashion that NASA FCU and the individual Defendants violated a fiduciary duty owed to him, citing multiple federal statutes that provide a cause of

---

[15] Article 17 provides, first, that "[e]veryone has the right to own property alone as well as in association with others," and second, that "[n]o one shall be arbitrarily deprived of his property." See, *Universal Declaration of Human Rights*, G.A. Res. 217A(III), U.N. GAOR, 3d Sess., U.N. Doc. A/810, at 74 (1948).

action for the breach of a fiduciary duty by a financial institution. Compl. ¶¶ 1, 48-49. NASA

FCU's Motion does not address these statutory claims, perhaps because they are somewhat

obscurely pleaded in Nix's Complaint. But in any case, the claims are completely meritless.

Nix cites, for example, with no discussion, 15 U.S.C. § 80a-35, a provision of the

Investment Companies Act of 1940 imposing a fiduciary duty on investment advisors. *See* 15

U.S.C. § 80a-35(a); *see also Gelfand v. Chesnutt Corp.*, 545 F.2d 807, 809 (2d Cir. 1976). That

statute applies to "investment companies," meaning an "issuer" which "holds itself out as being

engaged primarily, or proposes to engage primarily, in the business of investing, reinvesting, or

trading in securities." 15. U.S.C. § 80a-3(a). It explicitly does not apply to "[a]ny bank or

insurance company" or "any savings and loan association, building and loan association,

cooperative bank, homestead association, or similar institution, or any receiver, conservator,

liquidator, liquidating agent, or similar official or person thereof or therefor." *Id.* at (c). Because

banks, cooperative banks, and "savings and loan association[s]" are expressly exempt from this

law, and a credit union falls easily within any of those descriptions, Nix fails to state a claim

against NASA FCU and its employees under 15 U.S.C. § 80a-35.

Nix then cites, again with no discussion, 29 U.S.C. § 1105(b) and (c) and 29 U.S.C.

§ 1109(a), provisions of ERISA which apply to the fiduciaries of "employee benefit plans," 29

U.S.C. § 1001, meaning health insurance plans and pensions, *see* 29 U.S.C. § 1002 (1)-(3). No

facts in Nix's Complaint allege any breach of duty in relation to such a plan. Nix's allegations

pertain to a checking account. *See* Compl. ¶ 3. Nix fails to state a claim under these ERISA

provisions.

Even a claimed breach of fiduciary duty under Maryland tort law fails to launch. To

withstand a motion to dismiss, a plaintiff asserting breach of fiduciary duty must adequately

allege (1) the existence of a fiduciary relationship, (2) breach of the duty owed by the fiduciary

to the beneficiary, and (3) harm resulting from the breach. *Alleco Inc. v. Harry & Jeanette*

*Weinberg Found., Inc.*, 665 A.2d 1038, 1046 (Md. 1995). As NASA FCU points out, *see* Mot.

Dismiss at 7, ECF No. 10, under Maryland law, the relationship between a bank and its customer

is contractual, not fiduciary, in nature, except under limited special circumstances,[16] none of

which obtains here. *See Legore v. OneWest Bank FSB*, 898 F. Supp. 2d 912, 919 (D. Md. 2012)

("Absent 'special circumstances,' the court is reluctant to 'transform an ordinary contractual

relationship between a bank and its customer into a fiduciary relationship or to impose any duties

on the bank not found in the loan agreement.'" (quoting *Parker v. Columbia Bank*, 604 A.2d 521

(Md. 1990))); *see also Shahin v. Del. Fed. Credit Union*, 602 Fed. App'x 50 (3d Cir. 2015)

(applying Maryland law) (holding plaintiff stated no breach of fiduciary duty claim against

federal credit union because "the banker/customer relationship is one of creditor to debtor, which

does not give rise to a fiduciary relationship").[17] Because the relationship between a federal

credit union and its members is not fiduciary in nature, and because he has pleaded no facts

suggesting "special circumstances," Nix has failed to plead the first element of the common law

tort, namely the existence of a fiduciary relationship.

Count VI of the Complaint is **DISMISSED WITH PREJUDICE** as to both NASA FCU

and the individual Defendants.

---

[16] In *Windesheim v. Larocca* the Maryland Court of Appeals described four "special circumstances" in which a fiduciary relationship can exist between a lender and a borrower. *Windesheim v. Larocca*, 116 A.3d 954 (Md. 2015). These are situations in which the lender (1) took on any extra services on behalf of the borrowers other than furnishing money; (2) received a greater economic benefit from the transaction other than the normal mortgage; (3) exercised extensive control; or (4) was asked by the borrowers if there were any lien actions pending. *Id.* at 969. None of these circumstances conceivably applies to the case at bar.

[17] Nix's only response to these shortcomings is to cite various cases about IRS levies, none of which has any bearing on his claim. *See* Pl.'s Resp. Mot. Dismiss at 14, ECF No. 11.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff Nix's Motion for Leave to File a Surreply (ECF No. 13) is **GRANTED**. Defendant NASA FCU's Motion to Dismiss the Complaint (ECF No. 10) is **GRANTED**, and the claims against individual Defendants are **DISMISSED WITH PREJUDICE**.

A separate Order will **ISSUE**.

_____/s/_____
**PETER J. MESSITTE**
**July 29, 2016**                                    **UNITED STATES DISTRICT JUDGE**